UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION

| | |
|---|---|
| JOSE BARRERA,<br><br>        Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE, Comm.<br>Social Security Administration,<br><br>        Defendant, | ) ED CV 09-01902-SH<br>)<br>) MEMORANDUM DECISION<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

      This matter is before the Court for review of the decision by the Commissioner of Social Security denying plaintiff's application for Supplemental Security Income under Title XVI of the Social Security Act. Pursuant to 28 U.S.C. § 636(c), the parties have consented that the case may be handled by the undersigned. The action arises under 42 U.S.C. § 405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. Plaintiff and defendant have filed their pleadings (Plaintiff's Brief

with Points and Authorities in Support of Remand or Reversal; Defendant's Brief with Points and Authorities), and the defendant has filed the certified transcript of record. After reviewing the matter, the Court concludes that the decision of the Commissioner should be affirmed.

## BACKGROUND

On February 22, 2002, plaintiff filed a prior application for Supplemental Security Income. (AR 10). On February 14, 2005, that application was denied by an ALJ. Id. In that decision, the plaintiff was found to have a severe mental impairment consisting of a history of drug and alcohol abuse. Id. Also, plaintiff was found to have no physical impairment, he could perform work at any exertional level, and that he could perform work involving simple, routine, repetitive, and nonpublic tasks. Id.

On May 9, 2007, plaintiff Jose Barrera filed a second application for Supplemental Security Income, alleging an inability to work since February 1, 2002 due to schizophrenia. (Administrative Record ["AR"] 118-29). On May 28, 2009, an Administrative Law Judge ("ALJ") determined that plaintiff was not disabled within the meaning of the Social Security Act. (AR 5-15). Following the Appeals Council's denial of plaintiff's request for a review of the hearing decision (AR 1-3), plaintiff filed an action in this Court.

Plaintiff makes three challenges to the ALJ's Decision denying benefits. Plaintiff alleges that the ALJ erred in (1) rejecting a treating psychiatrist's opinion; (2) misinterpreting a Global Assessment of Functioning ("GAF") rating; and (3) failing to develop the record by not asking whether the plaintiff received Notice and if so, his reasons for not attending the psychiatric consultative evaluation appointments.

For the reasons discussed below, the Court concludes that the decision of the Commissioner should be affirmed.

## **DISCUSSION**

### I. THE ALJ DID NOT ERR IN NOT ADOPTING TO DR. CHATSUTHIPHAN'S OCTOBER 2006 EVALUATION

On February 22, 2002, plaintiff filed a previous application for Supplemental Security Income disability benefits. (AR 10). Plaintiff's application was initially denied, and on reconsideration was denied by an ALJ on February 14, 2005. Id.

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for disregarding a treating psychiatrist's 2006 opinion (Dr. Chatsuthiphan) regarding the diagnoses and the seriousness of plaintiff's symptoms and mental impairment on a certain date, October 11, 2006. (AR 174-5)

On June 14, 2007, plaintiff received routine outpatient treatment for a schizoaffective disorder, bipolar type by a treating psychiatrist[1] at the San Bernardino County Department of Behavioral Health. (AR 13, 168). On September 8, 2008, plaintiff was diagnosed with a psychotic disorder and received treatment at Phoenix Community Counseling by Dr. Imelda Alfonso. (AR 13, 216-24).

"The [plaintiff], in order to overcome the presumption of continuing nondisability arising from the first administrative law judge's findings of nondisability, must prove 'changed circumstances' indicating a greater disability." Chavez v. Brown, 844 F.2d 691, 693 (9th Cir. 1988). Also, the opinions of treating psychiatrists are entitled to special weight because the treating psychiatrists are hired to cure and have a better opportunity to know and observe plaintiff as an individual. See Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). "To reject the uncontroverted opinion of…plaintiff's [psychiatrists], the [ALJ] must present clear and convincing reasons for doing so." Id.; Montijo v. Sec'y of Health

---

[1]. The psychiatrist's name is undecipherable.

& Human Servs., 729 F.2d 599, 601 (9th Cir. 1984). The weight given to a treating psychiatrist's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. §§ 404.1527, 416.927 (2004). "The ALJ need not accept the opinion of any [psychiatrist], including [the] treating [psychiatrists], if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).

Plaintiff did not overcome the presumption of continuing nondisability from the first ALJ's decision dated February 14, 2005. The record is void of any deterioration of the plaintiff's health from a functional view point, since the prior adverse ALJ decision (see AR 10). The plaintiff continues to have a severe impairment of drug and alcohol abuse as shown by inconsistencies between plaintiff's testimony on March 23, 2009 that he had not used drugs or alcohol in two years, and records from Phoenix Community Counseling dated September 8, 2008 indicating use of drug and alcohol use at least as of August 2008, and some marijuana use within that time period (see AR 12, 216-24); the June 14, 2007 mental status examination by a psychiatrist at the San Bernardino County Department of Behavioral Health who stated that plaintiff's memory was intact and that he was oriented in all four spheres (see AR 13, 169); and the September 8, 2008 mental status examination by Dr. Imelda Alfonso at Phoenix Community Counseling who stated that plaintiff's thought content was within normal limits, insight and judgment were fair, memory was within normal limits, he was oriented in all four spheres, and there had been no psychiatric hospitalizations or suicide attempts since 2003 (see AR 12-13, 216-24).

The June 14, 2007 mental status examination showed plaintiff's memory was intact, he was oriented in all four spheres, plaintiff's prescription for Zyprexa helped him so long as plaintiff was medication compliant, and there was a lack of any acute mental health crisis requiring inpatient hospitalization or intensive

treatment (see AR 13, 167-98); the September 8, 2008 mental status examination showing that plaintiff's thought content was within normal limits, insight and judgment were fair, memory was within normal limits, he was oriented in all four spheres, and even though plaintiff complained of having increased auditory and visual hallucinations, plaintiff was not on his medication at that time (see AR 13, 216-224).

Therefore, the October 11, 2006 triage/screening evaluation (AR 173-175), which was simply a cursory intake evaluation, was of little value. Dr. Chatsuthiphan's screening evaluation was primarily a checklist, unsupported by clinical data, and was based largely on plaintiff's self-described symptoms. It added little to the medical picture of plaintiff as of the relevant date, May 9, 2007, the date of the second SSI Application. In sum, there was no evidence of any material adverse functional changes since the prior ALJ's decision on February 14, 2005.

## II. THE ALJ PROPERLY USED THE GLOBAL ASSESSMENT OF FUNCTIONING.

Plaintiff maintains that the ALJ misinterpreted the assessed Global Assessment of Functioning ["GAF"] rating because the ALJ failed to distinguish between the meanings of "serious" versus "major." Defendant asserts that the ALJ did not misrepresent the GAF rating because such rating was not *per se* disabling.

On June 14, 2007, a treating psychiatrist at the San Bernardino County Department of Behavioral Health gave plaintiff a GAF score of 50. (AR 170). On September 8, 2008, Dr. Imelda Alfonso at Phoenix Community Counseling gave plaintiff a GAF score of 43. (AR 217). In his Decision, the ALJ stated that according to the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) (4th ed., 1994), a GAF score between 41-50 indicates serious, but not major

symptoms in social, occupation, or school functioning. (AR 12).[1] The ALJ further stated that the GAF score does not indicate that behavior is considerably influenced by delusions or hallucinations. Id.

The ALJ did not misinterpret the GAF rating. "[The GAF scale] does not have a direct correlation to the severity requirements in [the Social Security Administration'] mental disorders listings." See DSM-IV at 32-33; see also 65 Fed. Reg. 50746, 50764-65. Moreover, the ALJ's finding that the GAF score did not indicate major symptoms in social, occupation, or school functioning was supported by the fact that plaintiff was not taking his medication when he complained of having increased auditory and visual hallucinations at the mental status examination on September 8, 2008 (see AR 13, 216-24); and plaintiff's mother's testimony that she believed that as long as plaintiff takes his medications, he can work in a secluded environment that is isolated (see AR 13, 16-41). Therefore, substantial evidence supports the ALJ's interpretation of the GAF scores.

### III. THE ALJ'S FAILURE TO FULLY QUESTION PLAINTIFF ABOUT MISSED APPOINTMENTS WAS NOT MATERIAL ERROR.

Plaintiff asserts that the ALJ failed to develop the record by failing to question plaintiff at the administrative hearing regarding whether he received notification of the four scheduled psychiatric consultative evaluation appointments, and whether plaintiff had a good reason for not attending those appointments. Plaintiff notes that there is no correspondence in the Administrative Record of the alleged notices that were mailed to him. Defendant argues that the ALJ was not required to further develop the record because the evidence in the record was not ambiguous nor inadequate to trigger the ALJ's duty to question plaintiff about the

---

[1] A GAF score of 41-50 indicates that the patient has "[s]erious symptoms or any serious impairment in social, occupational, or school functioning." Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) (4th ed., 1994).

scheduled appointments.

In the present matter, plaintiff missed four scheduled psychiatric consultative examinations. Specifically, in the Medical Evaluation/Case Analysis dated August 17, 2007, Dr. K. J. Loomis stated that plaintiff missed two consultative examinations. (AR 210-11). In the Medical Evaluation/Case Analysis dated January 9, 2008, Dr. Gina M. Rivera-Miya stated that plaintiff missed another two consultative examinations; and she further stated that timely notice was sent to plaintiff and his legal representative, but that neither had responded. (AR 212-15).

In this case, there is no evidence in the administrative hearing transcript dated March 23, 2009 that the ALJ questioned plaintiff regarding his failure to keep the scheduled psychiatric consultative examination appointments. (See AR 16-41). Additionally, at the administrative hearing, the ALJ did not ask plaintiff whether he received notice of the appointments. See id. Nonetheless, in his Decision, the ALJ stated the following:

> "The claimant failed to attend the consultative examination requested by the State Agency despite due process (Exhibit B5F, p. 2) and failed to respond to notices sent. State Agency review psychiatrists concluded there was insufficient evidence to determine whether or not the claimant had a mental impairment (Exhibit B2F). The Regulations state that, "[i]f you are applying for benefits and do not have a good reason for failing or refusing to take part in a consultative examination or test which we arrange for you to get information we need to determine your disability or blindness, we may find that you are not disabled or blind" (20 CFR 416.918(a)). Examples of good reasons for failing to appear include illness, death in the

7

> family, not receiving notice in a timely manner or being given incorrect/incomplete information about the physician involved or the time or place of the examination (20 CFR 416.918(b)). In sum, there is no evidence of any changes since the prior Administrative Law Judge's decision of February 14, 2005." (AR 13-14).

The ALJ's Decision to deny benefits "will be disturbed only if it is not supported by substantial evidence or it is based on material legal error." Magallanes v. Bowen, supra, 881 F.2d at 750. "Substantial evidence means 'more than a mere scintilla' but 'less than preponderance.'" Id., see Davis v. Heckler, 868 F.2d 323, 326 (9th Cir. 1989).

Further, the ALJ has an independent "duty to fully and fairly develop the record to assure that the [plaintiff's] interests are considered." Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)). This duty extends to the represented as well as to the unrepresented claimant. Id. "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001); see Smolen v. Chater, supra.

Moreover, harmless error applies in the Social Security context. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless."). "[W]here the ALJ's error lies in a failure to properly discuss [evidence] favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the [evidence], could have reached a different disability determination." Stout v. Soc. Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006). Further, "[s]o long as there remains 'substantial evidence supporting the ALJ's conclusions on…credibility' and the error 'does not negate the validity of the ALJ's

ultimate [credibility] conclusion,' such is deemed harmless and does not warrant reversal." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008); see Batson v. Comm'r of the Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004)).

Here, the ALJ committed no legal error regarding the lack of inquiry into the missed consultative psychiatric examination appointments, because the record was adequate to allow the ALJ to make a proper evaluation of plaintiff's alleged disability. That inquiry was not material to the ALJ's ultimate nondisability determination. Indeed, the ALJ did not materially rely on the missed appointments to find plaintiff not disabled. There was substantial evidence relied on by the ALJ that plaintiff was not disabled as defined under section 1614(a)(3)(A) in the Social Security Act as of the relevant date. (AR 5-15).

Even assuming the ALJ failed to develop the record by not questioning plaintiff regarding his failure to attend the psychiatric consultative examination appointments, such error was harmless.

The evidence supported the ALJ's determination that plaintiff retained the residual functional capacity for a full range of work at all exertional levels, with the nonexertional limitation that plaintiff could perform only simple, routine, repetitive, and nonpublic tasks. (AR 11). As discussed by the ALJ, the following evidence supported the finding that plaintiff retained the residual functional capacity for a full range of work at all exertional levels: the June 14, 2007 mental status examination by a psychiatrist at the San Bernardino County Department of Behavioral Health stated that plaintiff's memory was intact and that he was oriented in all four spheres (see AR 13, 169); the September 8, 2008 mental status examination by a Dr. Imelda Alfonso at Phoenix Community Counseling stated that plaintiff's thought content was within normal limits, insight and judgment were fair, memory was within normal limits, he was oriented in all four spheres, and there had been no psychiatric hospitalizations or suicide attempts since 2003 (see AR 12-13, 216-24); plaintiff's

mother's testimony stated she believed that as long as plaintiff takes his medications, he can work in a secluded environment that is isolated (see AR 13, 16-41); plaintiff's lack of credibility concerning the intensity, persistence, and limiting effects of the alleged symptoms, as shown by inconsistencies between plaintiff's testimony on March 23, 2009 that he had not used drugs or alcohol in two years and records from Phoenix Community Counseling dated September 8, 2008 indicating use of drug and alcohol use at least as of August 2008, and some marijuana use within that time period (see AR 12, 216-24); the fact that plaintiff's GAF score did not indicate his behavior was considerably influenced by delusions or hallucinations as plaintiff was prescribed Zyprexa, which helped the plaintiff when he was compliant (see AR 12); the fact that plaintiff stated he needed reminders to take his medications, but according to the medical record, the plaintiff's memory was intact (see AR 12, 167-98); and the fact that there was no evidence of any changes since February 14, 2005 (the date of the prior ALJ's decision (see id)).

Therefore, substantial evidence supports a finding that there was no legal error. The lack of inquiry into plaintiff's scheduled psychiatrist evaluation appointments would not have materially impacted the ALJ's Decision. Even assuming there was an error, such error was harmless. Consequently, even if plaintiff had a good reason for missing the scheduled appointments, this Court finds that no reasonable ALJ could have reached a different disability determination. See Stout v. Soc. Sec. Admin., supra.

///
///
///
///
///

## **ORDER**

For the foregoing reasons, the decision of the Commissioner is affirmed and the Complaint dismissed.

DATED: June 22, 2010

_____
STEPHEN J. HILLMAN
UNITED STATES MAGISTRATE JUDGE